UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

BENNYREY R.,

                                        Plaintiff,

v.                                                    5:22-CV-01273
                                                       (GLS/ML)

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.
_____

APPEARANCES:                            OF COUNSEL:


OLINSKY LAW GROUP                       HOWARD D. OLINSKY, ESQ.
  *Attorneys for Plaintiff*
250 S. Clinton Street, Suite 210
Syracuse, New York 13202

U.S. SOCIAL SECURITY ADMIN.             GEOFFREY M. PETERS, ESQ.
  *Counsel for Defendant*
6401 Security Boulevard
Baltimore, Maryland 21235

**MIROSLAV LOVRIC**, United States Magistrate Judge


## REPORT-RECOMMENDATION

Plaintiff Bennyrey R. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g)

seeking judicial review of a final decision of the Commissioner of Social Security ("Defendant"

or "Commissioner") finding that Plaintiff was no longer entitled to Supplemental Security

Income ("SSI") benefits. (Dkt. No. 1).  This matter was referred to me for Report and

Recommendation by the Honorable Gary L. Sharpe, United States Senior District Court Judge,

pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d).  This case has proceeded in accordance

with General Order 18.  Currently before this court are Plaintiff's motion for judgment on the pleadings and Defendant's motion for judgment on the pleadings. (Dkt. Nos. 12, 17).  Plaintiff has also filed a reply brief. (Dkt. No. 20).  For the reasons set forth below, this court recommends that the District Court grant Defendant's motion for judgment on the pleadings and affirm the Commissioner's decision.

## I.    PROCEDURAL HISTORY

Plaintiff had received children's disability benefits dating back to December 2009 due to functional limitations arising from attention deficit hyperactivity disorder ("ADHD") and other mental health impairments. (T. 66.)  As required by law, Plaintiff's eligibility for these disability benefits was redetermined under the rules for determining disability in adults when Plaintiff turned eighteen. (T. 54-64.)  On August 22, 2018, an initial determination was made that Plaintiff was no longer disabled as of that date. (T. 70-74.)  This determination was upheld upon reconsideration on August 28, 2019. (T. 84-96.)  Plaintiff requested a hearing before an administrative law judge ("ALJ") and appeared without counsel at a telephonic hearing before ALJ Jeremy Eldred on May 17, 2021. (T. 36-52.)  On May 25, 2021, the ALJ determined that Plaintiff was not disabled as of August 22, 2018, and had not become disabled again as of the date of the decision. (T. 17-35.)  The Appeals Council denied Plaintiff's request for review on September 29, 2022. (T. 1-7.)

Plaintiff commenced this judicial proceeding on November 29, 2022 to challenge the Commissioner's denial of disability benefits. (Dkt. No. 1.)

## II.    GENERALLY APPLICABLE LAW

### A.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the

correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g) (2015); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). To facilitate the court's review, an ALJ must set forth the crucial factors justifying his or her findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *see also Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted). Where substantial evidence supports the ALJ's findings they must be sustained "even where substantial evidence may

3

support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [ALJ's]." *Rosado*, 805 F. Supp. at 153.  In other words, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

### B.    Standard for Benefits[1]

To be considered disabled, a plaintiff-claimant seeking benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff-claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id*. § 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social Security Administration ("SSA") promulgated regulations establishing a five-step sequential

---

[1]  The requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so that "decisions under these sections are cited interchangeably." *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

evaluation process to determine disability.  20 C.F.R. § 416.920(a)(4) (2015).  Under that five-step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments;  (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments;  (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

## III.    FACTS

As of the date of the ALJ's decision, Plaintiff was 21 years old. (T. 290.)  He is a high school graduate who received special education assistance throughout elementary school and high school due to academic difficulties and mental health issues, including ADHD, Oppositional Defiant Disorder ("ODD"), anxiety, and depression. (T. 350, 500.)  Plaintiff received occupational training in food preparation and service while in high school but has no formal employment history. (T. 515, 551.)  At the time of his May 17, 2021 hearing, he resided with his mother. (T. 45, 51, 54).

While in high school, Plaintiff's Individualized Education Plan ("IEP") described "a long-standing school history of behavioral difficulties including significant emotional reactivity, verbal, and physical aggression, which adversely affected his functioning in the classroom . . . ." (T. 366.)  During these years, plaintiff began regular psychiatric treatment. (T. 500.)  By July

5

2017, Plaintiff was participating in mental health counseling and taking psychiatric medication for symptoms of anxiety and depression including "difficulty concentrating, sadness, mood swings, isolation, irritability, sleep disturbance, wishing he was dead, and worry." (T. 483.)  At his May 2021 hearing, Plaintiff testified that he continued to take prescribed psychiatric medication but was no longer attending regular counseling sessions. (T. 45.)

With regard to physical impairments, Plaintiff had been diagnosed with asthma at a young age and relied on a rescue inhaler about once per day. (T. 610.)  He also took prescribed medication for high blood pressure. (T. 45.)  Plaintiff testified that his obesity led to regular back pain that became worse when he stood for long periods. (*Id*.)  Medical records show that Plaintiff had been prescribed muscle relaxers for his back pain. (T. 678.)

The record includes treatment notes and examination results from before and after the disability cessation date.  Rather than summarizing these records at the outset, I will refer to the pertinent records during my discussion of Plaintiff's arguments.

## IV.    THE ALJ'S DECISION

After summarizing the procedural history of Plaintiff's claim, the ALJ found that Plaintiff had the following severe impairments since the disability cessation date of August 22, 2018: "asthma, obesity, depressive disorder, borderline intellectual functioning, and anxiety disorder." (T. 22-23.)  Next, the ALJ found that Plaintiff's impairments either singly or in combination did not meet or medically equal the severity of a listed impairment, including Listing 3.02 (chronic respiratory disorders), Listing 3.03 (asthma), Listing 12.04 (depressive, bipolar, and related disorders), Listing 12.05 (intellectual disorder), and Listing 12.06 (anxiety and obsessive-compulsive disorders). (T. 23-25.)  The ALJ then reached an RFC determination that Plaintiff could perform less than the full range of light work since August 22, 2018; that is, Plaintiff must

6

avoid exposure to temperature extremes, humidity, or wetness; must avoid
exposure to concentrated dust, odors, fumes, or gases; can understand, remember,
and carry out only simple and routine tasks; can concentrate, persist, and maintain
pace in a work setting to the extent necessary to perform only simple and routine
tasks; can tolerate ordinary levels of supervision in a customary work setting; can
do jobs that require only brief and superficial contact with co-workers or the
public; and can appropriately adapt to ordinary changes in an unskilled
occupation that involves only simple and routine tasks.

(T. 25-27.)

In making the RFC determination, the ALJ stated that he considered all of Plaintiff's

symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent

with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R.

416.929" and Social Security Ruling ("SSR") 16-3p. (T. 25.)  The ALJ further stated that he

considered opinion evidence and prior administrative medical findings in accordance with 20

C.F.R. § 416.920c. (*Id*.)  The ALJ also considered Plaintiff's subjective complaints regarding

pain, symptoms, and functional limitations raised during the hearing and found them not fully

supported by the medical evidence and other evidence in the record. (T. 26.)

The ALJ found that Plaintiff had no past relevant work. (T. 28.)  He proceeded to the next

step of the sequential analysis and relied on the VE testimony to find that there were jobs

existing in significant numbers in the national economy that Plaintiff could perform since August

22, 2018.  (T. 28-29.)  Accordingly, the ALJ found that Plaintiff's disability ended on or before

August 22, 2018, and that Plaintiff had not become disabled prior to the date of the ALJ's

decision. (T. 29.)

## V.    ISSUES IN CONTENTION

Plaintiff argues that the ALJ improperly evaluated the persuasiveness of the mental health

opinion evidence, particularly the February 13, 2020 opinion co-signed by Plaintiff's treating psychiatrist, Dr. Michael Pratts, and his regular mental health counselor, Lindsey Harkness. (Dkt. No. 12 at 12-18.)  Plaintiff further argues that the ALJ failed to properly develop the record regarding Plaintiff's physical impairments and improperly substituted his own lay opinion regarding the functional limitations associated with Plaintiff's asthma, obesity, and back pain. (*Id.* at 18-20.)  Plaintiff contends that these errors resulted in an RFC determination that was not supported by substantial evidence.  The Commissioner contends that the ALJ's analysis of the medical opinion evidence, Plaintiff's testimony, and the ultimate disability determination were supported by substantial evidence.  (Dkt. No. 17 at 5-19.)  For the reasons set forth in the report below, this court agrees with the Defendant and recommends that the District Court deny Plaintiff's motion for judgment on the pleadings, grant Defendant's motion for judgment on the pleadings, and affirm the Commissioner's decision.

## VI.    RFC AND MEDICAL OPINION EVIDENCE

### A.    Legal Standards

#### 1.    RFC

RFC is "what [the] individual can still do despite his or her limitations.  Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ."  A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule.  *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill,* No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018);

*Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R. §§ 404.1545, 416.945; *see Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010). An ALJ must specify the functions a plaintiff is capable of performing and may not simply make conclusory statements regarding a plaintiff's capacities. *Roat v. Barnhart,* 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris*, 728 F.2d at 588; *LaPorta*, 737 F. Supp. at 183, *Stephens v. Colvin,* 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts and non-medical evidence. *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

### 2.    **Evaluating Medical Evidence**

The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017,[2] and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. According to the new regulations, the Commissioner "will no

---

[2] Plaintiff attained age 18 on August 21, 2017. (T. 67.) For an age 18 redetermination, the Commissioner applies the amended regulations if the individual attained age 18 on or after

longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 82 Fed. Reg. 5844, at 5867–68, 2017 WL 168819 (Jan. 18, 2017), *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." *Id.* at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1).  The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853.

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at §§

---

March 27, 2017. *See* SSA POMS DI 24503.050(D)(8) ("When determining which set of evidence rules to follow, we consider an age 18 redetermination to be a new claim . . . filed on the day a person attains age 18."), *available at* https://secure.ssa.gov/apps10/poms.nsf/lnx/0424503050 [https://perma.cc/XVU8-K3YD].

404.1520(c)(1), 416.920(c)(1).  The regulations provide that with respect to "consistency,"
"[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the
evidence from other medical sources and nonmedical sources in the claim, the more persuasive
the medical opinion(s) or prior administrative medical finding(s) will be."  *Id.* at
§§ 404.1520(c)(2), 416.920(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the
three remaining factors in determining the persuasiveness of a medical source's opinion.  *Id.* at
§§ 404.1520(b)(2), 416.920(b)(2).  However, where the ALJ has found two or more medical
opinions to be equally well supported and consistent with the record, but not exactly the same,
the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3)
through (c)(5).  *Id.* at §§ 404.1520(b)(3), 416.920(b)(3).

### 3.      Developing the Record

Given the remedial intent of the Social Security statute and the non-adversarial
nature of benefits proceedings, an ALJ has an affirmative duty, regardless of whether the
claimant is represented by counsel, to develop the medical record if it is incomplete.  *Tejada v.
Apfel*, 167 F.3d 770, 774 (2d Cir. 1999); 20 C.F.R. §§ 404.1512 (d), 416.912(d) ("We will make
every reasonable effort to help you get medical reports from your own medical sources when you
give us permission to request the reports."); *see also Vincent v. Comm'r of Soc. Sec.*, 651 F.3d
299, 305 (2d Cir. 2011) ("The duty of the ALJ, unlike that of a judge at trial, is to investigate and
develop the facts and develop the arguments both for and against the granting of benefits.").
"This entails a heightened obligation to ensure both the completeness and the fairness of the
administrative hearing."  *Id.* (citing *Cullinane v. Sec. of Dep't of Health and Human Services of*

*U.S.*, 728 F.2d 137, 137 (2d Cir. 1984) (describing an ALJ's "affirmative duty to ensure that pro

se disability insurance benefit claimants receive full and fair hearings")).

In furtherance of the duty to develop the record, an ALJ may re-contact medical sources

if the evidence received from the treating physician or other medical sources is inadequate to

determine disability and additional information is needed to reach a determination.  20 C.F.R. §§

404.1512(e), 416.912(e).  Although the ALJ must attempt to fill in any obvious gaps in the

administrative record, "where the record evidence is sufficient for the ALJ to make a disability

determination, the ALJ is not obligated to seek further medical records."  *Jaeger-Feathers v.*

*Berryhill*, No. 1:17-CV-06350, 2019 WL 666949, at *3 (W.D.N.Y. Feb. 19, 2019) (quoting

*Johnson v. Comm'r of Soc. Sec.*, No. 1:17-CV-06350, 2018 WL 1428251, at *5 (W.D.N.Y. Mar.

22, 2018)).

### B.    The ALJ's Evaluation of the Mental Health Opinion Evidence was Supported by Substantial Evidence.

The ALJ evaluated three mental health opinions from acceptable medical sources in

reaching his RFC determination. (T. 27.)  He deemed the August 8, 2018 opinion of state agency

psychological consultant Dr. J. Dambrocia and the July 25, 2018 opinion of consultative

psychiatric examiner Dr. Jeanne Shapiro to each be persuasive. (T. 27, 59-63, 515-525.)  He also

considered the opinion co-signed by Dr. Pratts and Ms. Harkness, but found it to be

unpersuasive. (T. 27, 629-633.)  Plaintiff contends that remand is required because the ALJ

failed to adequately explain her reasoning when evaluating the persuasiveness of the

Pratts/Harkness[3] opinion, and did not adequately consider the rationale provided by these long-

---

[3] When the written opinion of a non-acceptable medical source, such as a social worker, is co-signed by a physician, the report is generally considered to be the physician's opinion.  *See Gandino v. Comm'r of Soc. Sec.*, No. 5:17-CV-42 (WBC), 2018 WL 1033287, at *7 (N.D.N.Y.

time treating sources.  Before addressing the merits of that argument, this court will first

summarize each of the mental health opinions, along with the ALJ's analysis of each.

### 1.  Dr. Shapiro's July 25, 2018 Consultative Psychiatric Opinion

Dr. Shapiro conducted a consultative psychiatric examination and intelligence assessment

of Plaintiff on July 25, 2018. (T. 515-525.)  Prior to the examination, Plaintiff reported that he

"gets depressed for no reason," and feels "down and sad" and "emotionally drained." (T. 516.)

Plaintiff also reported difficulty staying focused and finishing tasks and attributed these

difficulties to his diagnosed ADHD. (*Id.*)  He reported feeling anxious around other people, but

did not anticipate any difficulty interacting with classmates when he started college. (*Id.*)

During her examination, Dr. Shapiro found Plaintiff to have a cooperative demeanor with

an adequate manner of relating, social skills, and overall presentation. (T. 517.)  Plaintiff

reported "feeling calm" and appeared relaxed and comfortable.  (*Id.*)  He demonstrated coherent

and goal-directed thought processes with no evidence of delusions, hallucinations, or disordered

thinking.  (*Id.*)  His attention and concentration were intact, and he showed no memory deficits.

(*Id.*)  Based on her evaluation and Plaintiff's intelligence test results, Dr. Shapiro assessed

Plaintiff's intellectual functioning to be "in the borderline range." (T. 517, 522-524.)  Overall,

Dr. Shapiro opined that Plaintiff

> appears to have no limitations understanding, remembering, or applying simple
> directions and instructions.  He appears to have mild limitations understanding,
> remembering or applying complex directions and instructions.  He appears to
> have no limitations using reasoning and judgment to make work-related decisions.
> He appears to have mild limitations interacting adequately with supervisors,
> coworkers, and the public.  He appears to have mild limitations sustaining
> concentration and performing a task at a consistent pace.  He appears to have no

February 22, 2018) (collecting cases).  For narrative clarity, this court will refer to the report as
the "Pratts/Harkness" opinion.

> limitations sustaining an ordinary routine and regular attendance at work. He
> appears to have mild limitations regulating emotions, controlling behavior, and
> maintaining well-being. He appears to have no limitations maintaining personal
> hygiene and wearing appropriate attire. He appears to have no limitations being
> aware of normal hazards and taking appropriate precautions.

(T. 518.) In Dr. Shapiro's opinion, the examination results were consistent with psychiatric

problems, and Plaintiff's symptoms may interfere with his ability to function in "certain

situations." (*Id.*) She further opined that Plaintiff's cognitive deficits may interfere with his

ability to function "at times." (T. 518, 524.) She recommended that Plaintiff continue with his

current course of psychiatric treatment but consider ADHD medication when he attended college

in the fall. (T. 518.)

The ALJ found Dr. Shapiro's opinion to be persuasive, because it was "well supported by

the detailed findings from her examination of the claimant." (T. 27.) In particular, the ALJ cited

Plaintiff's intact memory, coherent thought processes, and cooperative and appropriate demeanor

during the evaluation. (*Id.*) The ALJ also noted Dr. Shapiro's observation that Plaintiff appeared

"relaxed and comfortable" during the intelligence test, with "good attention and concentration"

while appearing to work "with reflection and deliberation." (T. 27, 522.) Looking at Plaintiff's

broader medical history, the ALJ found Dr. Shapiro's opinion to be consistent with documented

improvement in Plaintiff's mental health as he progressed in treatment, particularly the

"unremarkable" mental status examinations conducted by Plaintiff's treating sources after the

disability cessation date of August 22, 2018. (T. 27, 571, 574, 578, 582, 586, 590, 614, 618, 622,

626, 634-635, 638-649, 652-653, 656-657.)

### 2. Dr. Dambrocia's August 8, 2018 Non-Examining Opinion

Dr. Dambrocia reviewed Plaintiff's then-current medical records and prepared an opinion

of his mental health functional limitations dated August 8, 2018. (T. 60-64.) With regard to

14

understanding and memory, Dr. Dambrocia opined that Plaintiff had no significant limitations with regard to remembering location and work-like procedures, understanding and remembering very short and simple instructions, or making simple work-related decisions, but was "moderately" limited in his ability to understand and remember detailed instructions. (T. 60.)

After assessing Plaintiff's ability to sustain attention and concentration, Dr. Dambrocia opined that Plaintiff was not significantly limited in his ability to carry out very short and simple instructions, or to maintain attention and concentration for extended periods. (T. 61.) The state agency consultant further opined that Plaintiff showed no evidence of significant limitations in his ability to perform activities within a schedule, maintain regular attendance, or be punctual within customary tolerances. (*Id.*) In Dr. Dambrocia's opinion, Plaintiff was "moderately limited" in his ability to work in coordination with or in proximity to others without being distracted by them, and in his ability to complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (T. 61.)

With regard to social interaction, Dr. Dambrocia opined that Plaintiff had no significant limitations in his ability to ask simple questions, request assistance, get along with coworkers or peers, or maintain socially appropriate behavior. (T. 61.) In Dr. Dambrocia's opinion, Plaintiff had "moderate" limitations in his ability to interact appropriately with the general public, and in his ability to accept instructions and respond appropriately to criticism from supervisors. (*Id.*)

Dr. Dambrocia also addressed adaptation limitations, opining that Plaintiff had no significant limitations in his ability to take precautions against normal safety hazards, travel in unfamiliar places, or use public transportation. (T. 63.) The state agency consultant further

opined that Plaintiff was "moderately" limited in his ability to respond appropriately to changes

in the work setting, to set realistic goals, or to make plans independently of others. (*Id.*)

In the accompanying narrative, Dr. Dambrocia summarized Plaintiff's special education

background and psychiatric treatment history, and cited portions of the consultative examination

report. (*Id.*)  Dr. Dambrocia explained that:

> Overall, based on psychiatric/cognitive limitations, the claimant is viewed as able
> to understand and remember instructions and sustain attention and concentration
> for tasks.  Given reports and history, the claimant may have difficulties relating
> with others and/or adapting to changes; the claimant's ability to deal with co-
> workers and the public would be somewhat reduced, but adequate to handle brief
> and superficial contact.  Similarly, his ability to tolerate and respond appropriately
> to supervision would be reduced, but adequate to handle ordinary levels of
> supervision in the customary work setting.

(*Id.*)

The ALJ found Dr. Dambrocia's opinion to be persuasive because it was "supported by a

detailed narrative rationale which cites supporting evidence from the record." (T. 27.)  He also

found the state agency consultant's opinion to be "consistent with the record as a whole,

including the content of the mental health treatment records from the disability cessation date

forward . . . . " (*Id.*)

### 3. Treating Source Opinion from Dr. Pratts and Social Worker Harkness

At the time of the February 13, 2020 Medical Source Statement, Plaintiff was seeing Dr.

Pratts on a quarterly basis and seeing Ms. Harkness for monthly therapy sessions. (T. 629.)

Although the earliest treatment notes in the record from either source are from May 2017,

Plaintiff's treatment relationship with Dr. Pratts dates back "many years" earlier. (T. 476, 500.)

Based on that long-standing treatment relationship, Pratts/Harkness identified Plaintiff's

mental health impairments as generalized anxiety and major depressive disorder, manifesting in

symptoms including decreased energy, feeling of guilt or worthlessness, pervasive loss of

interest in almost all activities, generalized persistent anxiety, paranoid thinking, impaired

impulse control, emotional withdrawal or isolation, illogical thinking, and disturbed sleep. (T.

629.)  Due to these symptoms, the treating sources opined that Plaintiff was "unable to meet

competitive standards" in a number of functional areas:

> remembering work-like procedures; maintaining regular attendance and being
> punctual within customary tolerances; sustaining an ordinary routine without
> special supervision; working in coordination with or in proximity to others
> without being unduly distracted; making simple work-related decisions;
> completing a normal workday and workweek without interruptions from
> psychologically based symptoms; getting along with co-workers or peers without
> unduly distracting them or exhibiting behavioral extremes; responding
> appropriately to changes in a routine work setting; dealing with normal work
> stress; maintaining socially appropriate behavior; traveling to unfamiliar places;
> and using public transportation.

(T. 630.)  Pratts/Harkness also opined that Plaintiff was "seriously limited, but not precluded" in

a number of other functional areas:

> understanding, remembering, and carrying out very short and simple instructions;
> maintaining attention for two hour segments; asking simple questions or
> requesting assistance; being aware of normal hazards and taking appropriate
> precautions; interacting appropriately with the general public; and adhering to
> basic standards of neatness and cleanliness.

(*Id.*)  In their opinion, these limitations had existed to the same degree since at least August 22,

2017. (T. 632.)

In an accompanying narrative, the treating sources opined that Plaintiff "has a difficult

time managing his anxiety around others.  He struggles with self-direction and has deficits in

recognizing unsafe situations." (*Id.*)  Utilizing a check-box form, they further opined that

Plaintiff has "repeated episodes of deterioration or decompensation in work or work-like settings

which cause the patient to withdraw from the situation or experience exacerbation of signs and

symptoms;" and "has deficiencies of concentration, persistence, or pace resulting from failure to complete tasks in a timely manner." (T. 631.) Pratts/Harkness opined that Plaintiff's mental health impairments were likely to produce "good" and "bad" days and estimated that Plaintiff would be off task more than twenty percent of the average workday and absent from work more than four days per month. (*Id.*)

The ALJ found the Pratts/Harkness opinion to be unpersuasive, stating "[n]o significant rationale was provided, and the limitations shown in the assessment are completely inconsistent with the evidence regarding the claimant's positive response to mental health treatment and the longitudinal mental status examination findings in the record, as referenced above." (T. 27.) Here, the ALJ referenced treatment notes, many signed by Dr. Pratts, documenting improvement in Plaintiff's mental health symptoms between September 10, 2018 to February 1, 2021. (T. 27, 571, 618, 641, 645.)

### 4. The ALJ's Evaluation of the Pratts/Harkness Opinion was Supported by Substantial Evidence.

"At their most basic, the amended regulations require that the ALJ explain [his] findings regarding the supportability and consistency for each of the medical opinions, 'pointing to specific evidence in the record supporting those findings.'" *Raymond M. v. Comm'r of Soc. Sec.*, No. 5:19-CV-1313 (ATB), 2021 WL 706645, at *8 (N.D.N.Y. February 22, 2021). An ALJ's failure to explain the supportability and consistency of the medical opinions in the record is procedural error. *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019*); see also Loucks v. Kijakazi,* No. 21-174, 2022 WL 2189293, at *2 (2d. Cir. June 17, 2022) (finding that "the ALJ committed procedural error by failing to explain how it considered the supportability and consistency of medical opinions in the record"). However, the Second Circuit has recently

clarified that an ALJ's procedural error in failing to explain how he or she considered the supportability and consistency of medical opinions in the record does not necessarily preclude affirmance of the Commissioner's decision. *Loucks*, 2022 WL 2189293, at *2. As the *Loucks* decision points out, it is well-settled that "[d]espite [an] ALJ's procedural error," a reviewing court can affirm if "a searching review of the record assures [the court] that the substance of the [regulation] was not traversed." *Id.*, 2022 WL 2189293, at *2 (quoting *Estrella*, 925 F.3d at 96). Thus, while a reviewing court may not affirm the Commissioner's decision based on an impermissible post-hoc rationalization, it may affirm where the ALJ's consideration of the relevant factors can be gleaned from the ALJ's decision as a whole. *See, e.g. John L.M. v. Kijakazi,* No. 5:21-CV-368 (BKS/TWD), 2022 WL 3500187, at *2-3 (N.D.N.Y. August 18, 2022); *Ricky L. v. Comm'r Soc. Sec.*, No. 20-CV-7102, 2022 WL 2306965, at *4 (W.D.N.Y. June 27, 2022).

Plaintiff challenges the ALJ's overall conclusion that the Pratts/Harkness opinion provided "no significant rationale." However, the ALJ appears to have appropriately followed the regulatory instruction that "[t]he more relevant the supporting explanations presented by a medical source are to support her opinion, the more persuasive the medical opinion will be." 20 C.F.R. § 416.920c(c)(1); *Carmen M. v. Comm'r of the Soc. Sec. Admin*, No. 20-CV-06532-MJR, 2021 WL 5410550, at *4 (W.D.N.Y. Nov. 19, 2021) ("The supportability factor asks how well a medical source supported their opinion(s) with objective medical evidence and supporting explanations."). The Pratts/Harkness opinion consists of a listing of Plaintiff's diagnosed psychiatric conditions and manifested symptoms, followed by a separate listing of Plaintiff's purported functional limitations. There is a brief narrative section providing additional detail on

those symptoms, but no substantive explanation of the connection between the asserted symptoms and Plaintiff's likely ability to perform in the workplace. (T. 630.)

Crucially, the ALJ's decision includes an evaluation of the supportability and consistency of the Pratts/Harkness opinion that is supported by substantial evidence. The ALJ expressly compared the February 2020 Pratts/Harkness opinion with the treating sources' contemporaneous treatment notes. These notes consistently describe Plaintiff as "stable and doing well" with regard to depression, anxiety, and mood disorders. (T. 634, 640, 648, 656.) During this period, Dr. Pratts described Plaintiff's depression as "mild." (T. 656.) With regard to attention and concentration, Dr. Pratts consistently described Plaintiff as able to "attend and maintain focus." (T. 635, 641, 649, 657.) With regard to impulse control, Pratts/Harkness describe Plaintiff as "reflective and able to resist urges." (T. 635, 641, 649, 657.) The notes reflect Plaintiff's stated agreement with this generally positive assessment of his mental health. (T. 634, 640, 648, 656.) As noted by the ALJ, Dr. Pratts and Ms. Harkness found Plaintiff's progress in treatment and overall mental health warranted a reduction in the frequency of his counseling sessions. (T. 26, 638.)

The ALJ reviewed the consultative opinions of Dr. Shapiro and Dr. Dambrocia in the same manner and found much greater consistency with the overall medical record, including Dr. Pratt's treatment notes. (T. 27.) The ALJ also noted Plaintiff's own reports that he got along well with his peers, had attended college classes, and had not required therapy sessions in about a year. (T. 45, 516, 524.) The ALJ could reasonably rely on all of these factors in support of lesser restrictions than set forth in the Pratts/Harkness opinion. *Krystle H. v. Comm'r of Soc. Sec.*, No. 3:20-CV-855 (TWD), 2022 WL 888225, *7 (N.D.N.Y. Mar. 25, 2022) (citing

20

regulatory requirement that an ALJ consider evidence of a claimant's daily activities when evaluating medical opinion evidence).

Plaintiff contends that the ALJ erred by failing to discuss Plaintiff's school records, such as his IEP, in greater detail, and failing to expressly consider their relevance to the restrictions set out in the Pratts/Harkness treating source opinions. (Dkt. No. 12 at 16-17.)  In particular, Plaintiff cites notes from April 2010 (more than seven years before Plaintiff's eighteenth birthday) that document his problems maintaining attention and concentration, difficulties with social interaction, and disruptive behavior that included being physically and verbally aggressive. (T. 345-346.)  However, "it is not the function of the reviewing court to reweigh the evidence."  *Vincent v. Shalala*, 830 F. Supp. 126, 133 (N.D.N.Y. 1993) (<u>citing</u> *Carroll v. Sec'y of Health and Human Servs*., 705 F.2d 638, 642 (2d Cir. 1983)).  The ALJ's RFC determination demonstrates his awareness of Plaintiff's psychiatric treatment history, and it was not unreasonable for the ALJ to rely on the extensive medical evidence, including Dr. Pratt's own treatment notes, documenting an improvement in Plaintiff's mental health much closer in time to his disability cessation date of August 22, 2018 when evaluating the medical opinion evidence.

### 5. The ALJ's Evaluation of Plaintiff's Physical Impairments Was Supported by Substantial Evidence and Did Not Require Further Development of the Record.

"Where the record primarily discusses a plaintiff's impairments, symptoms, and treatment, but does not shed light on the plaintiff's physical limitations, the ALJ may not rely on the record in determining the plaintiff's RFC."  *Spivey v. Comm'r of Soc. Sec*., 338 F. Supp.3d 122, 128 (W.D.N.Y. 2018).  Stated another way, where the medical findings in the record merely diagnose the claimant's exertional impairments and do not relate these diagnoses to specific residual capacities, the ALJ may not make the connection himself.  *Johnson v. Comm'r of Soc.*

21

*Sec.*, 351 F. Supp.3d 286, 293 (W.D.N.Y. 2018).  This is because an ALJ is not a medical

professional and is not qualified to assess a plaintiff's RFC on the basis of bare medical findings.

*Williams v. Comm'r of Soc. Sec.*, 366 F. Supp.3d 411, 416 (W.D.N.Y. 2019).

With this in mind, district courts have permitted an ALJ to use common sense judgment

about functional capacity without a physician's assessment only when the medical evidence

reveals minor physical impairments.  *Id*. at 417-418.  It follows, then, that where the ALJ

identifies physical impairments for which plaintiff received significant treatment, a medical

opinion addressing plaintiff's functional limitations is required.  *Id*. at 418.

In this case, the record did not include a medical opinion addressing Plaintiff's physical

impairments.  In the absence of such medical opinion, the ALJ based his assessment of

Plaintiff's physical impairments on the available treatment notes and Plaintiff's description of his

own symptoms.  Plaintiff contends that such evidence was inadequate to properly assess his

physical RFC, and that the ALJ was obligated to further develop the record by soliciting a

treating source or consultative opinion.  This court disagrees.

Plaintiff testified at his hearing that his primary physical impairments were asthma,

obesity, high blood pressure, and "back problems." (T. 45.)  He estimated that he could walk

seven blocks before needing to take a break. (T. 405.)  Plaintiff described his physical symptoms

this way:

> …if I like stand for a little too long, my back will start hurting really bad.  I also
> get dizzy with the high blood pressure.  And I also overheat really quickly too if
> I'm like out in public . . . I just get really hot really quickly.  Like I can just be
> standing and I'll be sweating.  My hair will be all wet and stuff.

(T. 45-46.)

As of the May 2021 hearing, Plaintiff testified that he had not seen a doctor recently for

22

these physical impairments because he had not "really left the house at all" due to the COVID-19 pandemic and his mental health issues. (T. 45.)  The ALJ considered the available medical records showing an asthma diagnosis and a prescribed rescue inhaler along with primary care examinations from September 2019 and February 2020 showing clear lungs with good airflow and a normal respiration rate. (T. 26, 595, 610-611, 672, 674.)  The ALJ also cited physical examinations from October 2018, May 2019, September 2019, February 2020 and December 2020 all showing Plaintiff with full strength and musculoskeletal range of motion with no evident pain or stiffness, a normal gait, and unlabored breathing. (T. 26-27, 607, 609, 611, 674, 678.)

In his decision, the ALJ concluded that limiting Plaintiff to light work that did not involve exposure to lung irritants or extreme temperatures, humidity, and wetness reflected "reasonable accommodations to account for his obesity and asthma." (T. 27.)  Other courts have considered such accommodations to be reasonable, "common sense" restrictions to address a minimal treatment history for asthma, obesity, and back pain, even when not endorsed by a formal medical opinion.  *See Collins v. Comm'r of Soc. Sec.*, No. 18-CV-777Sr, 2020 WL 1275453, at *4 (W.D.N.Y.  March 17, 2020) (finding substantial evidence supported RFC of light work with limited exposure to humidity and wetness, dust, odors, fumes, pulmonary irritants, and extreme temperatures where record showed minimal treatment for asthma and back pain and normal pulmonary examination results); *see also Ismet v. Saul*, No. 6:19-CV-1175 (GTS), 2021 WL 964209, at *7 (N.D.N.Y. March 15, 2021) (finding an ALJ is entitled to rely on his own assessment of the medical evidence when formulating the RFC in the absence of a formal opinion where "the treatment notes contain almost no evidence that suggests that Plaintiff has any exertional restrictions as a result of his severe [physical] impairments.)

Moreover, the RFC restrictions regarding light work, lung irritants, and environmental conditions appear to be drawn directly from Plaintiff's own assessment of his abilities during his hearing testimony. (T. 45-46.)  Where an ALJ relies on Plaintiff's own testimony about his functional abilities, there is a reduced concern that the ALJ impermissibly "play[ed] doctor" to determine Plaintiff's functional limitations.  *See Nancy B. v. Comm'r of Soc. Sec.*, No. 19-CV-6574, 2021 WL 716705, at *3 (W.D.N.Y. Feb. 24, 2021).

Therefore, although there was no medical opinion providing the specific restrictions reflected in the ALJ's RFC determination, such opinion evidence was not required because "the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity." *Tankisi*, 521 F. App'x at 34.  Here, the medical treatment notes in the record and Plaintiff's hearing testimony were in line with the ALJ's physical RFC determination.

Although Plaintiff is represented by counsel in this judicial proceeding, he correctly points out that his pro se status during the administrative hearing imposed a heightened obligation on the ALJ to ensure proper development of the record.[4]  *See Rivers v. Kijakazi*, No. 21-1935-CV, 2023 WL 2485467, at *1-2 (2d Cir. March 14, 2023) (collecting cases).  The ALJ met this obligation during the hearing by reminding Plaintiff of his right to counsel, confirming the identity of all his treatment providers, and inquiring about recent medical and psychiatric appointments. (T. 39-45.)  The hearing transcript does not suggest that Plaintiff had difficulty responding to these questions, and Plaintiff testified that he had not sought recent medical

---

[4] Plaintiff had legal representation at the beginning of the administrative process. (T. 99, 158.)  During this time, Plaintiff's legal counsel obtained updated treatment records on his behalf and supplemented the record before the ALJ, but correspondence suggests that Plaintiff's primary care physician declined counsel's January 2020 request for a medical opinion. (T. 453-455, 595-612, 672.)  Plaintiff's legal counsel withdrew prior to the May 17, 2021 hearing. (T. 192.)

treatment for his physical impairments. (T. 45-46.)  Thus, the ALJ could reasonably conclude

that the record was complete.  *See Moran v. Astrue*, 569 F.3d 108, 112-113 (2d Cir. 2009) ("The

ALJ must 'adequately protect a pro se claimant's rights by ensuring that all of the relevant facts

are sufficiently developed and considered' and by 'scrupulously and conscientiously prob[ing]

into, inquir [ing] of, and explor[ing] for all the relevant facts.'") (internal quotation omitted).  In

addition, Plaintiff is represented by legal counsel in this proceeding but has not identified "any

clear gaps in the administrative record" to this court that would encourage remand for new

medical opinions or other development of the record regarding Plaintiff's physical impairments.

*See Rosa v. Callahan*, 168 F.3d 72, 79-80 (2d Cir. 1999).

      **ACCORDINGLY**, it is

      **RECOMMENDED** that the Commissioner's decision be **<u>AFFIRMED</u>**, Defendant's

motion for judgment on the pleadings (Dkt. No. 17) be **<u>GRANTED</u>**, Plaintiff's motion for

judgment on the pleadings (Dkt. No. 12) be **<u>DENIED</u>**; and Plaintiff's complaint (Dkt. No. 1) be

**<u>DISMISSED</u>**.

      Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written

objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE**

**APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v.*

*Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1);

Fed. R. Civ. P. 72.

Dated:

October 19, 2023
Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge

25